UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————

KATHLEEN DAWN PATTI,

                              Plaintiff,

            -vs-                                        13-CV-1123-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

———————————————————————————

APPEARANCES:   BERNHARDI & LUKASIK PLLC (SARAH A. FREDERICK, ESQ., of
               Counsel), West Seneca, New York, for Plaintiff.

               WILLIAM J. HOCHUL, JR., United States Attorney (PETER JEWETT,
               Special Assistant United States Attorney, of Counsel), Buffalo, New
               York, for Defendant.


## <u>INTRODUCTION</u>

       This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated October 2, 2014 (Item

8).

       Plaintiff Kathleen Dawn Patti initiated this action on November 15, 2013, pursuant

to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's

application for Social Security Disability Insurance ("SSDI") benefits under Title II of the

Act.  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure (*see* Items 3, 5).  For the following reasons, plaintiff's

motion is GRANTED, and the Commissioner's motion is DENIED.

## BACKGROUND

Plaintiff was born on March 12, 1959 (Tr. 162).[1]  She filed an application for SSDI benefits with a protective filing date of January 21, 2011, alleging disability due to musculoskeletal problems, including impairments of the spine, right shoulder, and right elbow, with an onset date of November 11, 2009  (Tr. 162, 177).  The application was denied administratively on May 9, 2011 (Tr. 79-86).  Plaintiff then requested a hearing, which was held on May 7, 2012, before Administrative Law Judge ("ALJ") David S. Lewandowski (Tr. 17-49).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  A vocational expert ("VE") also appeared and testified.

On May 18, 2012, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 63-71).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (cervical disc disease, lumbar disc disease, status post right shoulder arthroscopic surgery, and status post right knee arthroscopic surgery) while "severe," did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")  (Tr. 65-66).  The ALJ discussed the evidence in the record, including reports from treating and consultative medical sources and plaintiff's hearing testimony and statements regarding her complaints of pain and limitations of functioning, and determined that plaintiff could not

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner in this action.

perform her past relevant work as a licensed practical nurse, but had the residual functional capacity ("RFC") to perform light work[2] with several specified exertional limitations (Tr. 66-69).  Relying on the VE's testimony indicating that an individual of plaintiff's age, education, work experience, and RFC would be able to perform the physical and mental demands of a significant number of jobs existing in the national and local economies, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 70-71).

The ALJ's decision became the final decision of the Commissioner on September 24, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-6), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because (1) the ALJ erred in relying on the testimony of the VE; (2) the RFC determination was not based on substantial evidence; and (3) the ALJ failed to properly assess plaintiff's credibility.  *See* Items 3-1, 7.  The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence.  *See* Items 5-1.

---

[2]Light work involves lifting no more than 20 pounds occasionally, 10 pounds frequently, standing and/or walking for six hours in an eight-hour work day and sitting six hours in an eight-hour work day. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling (SSR) 83-10. If someone can perform light work, the Commissioner determines that they can also perform sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …."   42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis.

4

1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).   Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was

substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.   Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§§ 404.1520. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe"

6

impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …."  20 C.F.R. §§ 404.1520(c); *see also* §§ 404.1509 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education,

and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by h[er] exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III.    The ALJ's Disability Determination

In this case, ALJ Lewandowski determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since November 11, 2009, the alleged onset date (Tr. 65).  At steps two and three, as indicated above, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals the severity of any of the impairments in the Listings (Tr. 65-66).

At step four, the ALJ discussed the medical evidence of record, including plaintiff's partial tear of the supraspinatus tendon and shoulder surgery in January 2009, disc herniation at L5-S1 and microdiscectomy in August 2010, and meniscus tear and arthroscopic knee surgery in October 2011.  He found that while plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, her statements concerning the intensity, persistence and limiting effects of her symptoms were "not credible to the extent they are inconsistent with" the ALJ's RFC assessment (Tr. 68).  As for the opinion evidence, the ALJ apparently credited the medical source

8

statement of Dr. Donna Miller, who conducted a consultative internal medicine examination of plaintiff on April 8, 2011, and found her to have "mild limitation on repetitive heavy lifting, bending, turning, twisting, reaching, pushing, and pulling." (Tr. 364).  Based on his review of the evidence, the ALJ found that plaintiff had the RFC to perform light work, with certain additional functional limitations related to climbing, balancing, stooping, crouching, kneeling, crawling, overhead reaching with the right extremity, and rotation of her neck (Tr. 66).  Relying on the VE's testimony that an individual with plaintiff's RFC could not perform her past relevant work as a licensed practical nurse, but could perform other jobs that exist in significant numbers in the national economy, the ALJ concluded that plaintiff was not disabled within the meaning of the Act (*see* Tr. 70-71).

IV.    **Plaintiff's Motion**

A.  **VE Testimony**

Plaintiff contends that the ALJ improperly relied on the VE's testimony indicating that an individual of plaintiff's age, education, work experience, and RFC would be able to perform the physical and mental demands of jobs that exist in the local and national economies.  The transcript reveals that the ALJ asked the VE to assume an individual of plaintiff's age, education, and experience capable of performing light work, with the following additional limitations:

> [N]o ladder, rope or scaffold climbing, no unprotected heights.  The individual would be limited to occasional pushing, pulling and reaching.  There would be occasional overhead reaching with the right upper extremity. There would be frequent rotation of the neck.  However, the individual would not be able to keep their neck in a static position for more than 20 minutes at a time.

(Tr. 41).  The VE responded that such an individual would not be able to perform plaintiff's

past work as a licensed practical nurse, but would be able to perform several other jobs existing in significant numbers in the national economy, including administrative clerk, companion, and courier messenger  (*see* Tr. 41-42).   The ALJ asked the VE if her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), and the VE replied that it was (Tr. 48).  Plaintiff argues that none of the jobs cited by the VE could be performed by a person with plaintiff's exertional limitations, specifically the limitation for only occasional pushing, pulling, and reaching (*see* Item 3-1, p. 24).

Where a claimant's impairments are such that she cannot perform her past work, the burden shifts to the Commissioner to prove that there are other jobs that the claimant is capable of performing.  *Rosa v. Callahan*, 168 F.3d at 77.  The Commissioner is required to "produce evidence to show the existence of alternative substantial gainful work which exists in the national economy," taking account of the claimant's age, education and training. *Id.* at 77–78. The Commissioner can meet this burden by resorting to the applicable medical vocational guidelines, but when the guidelines fail to encompass the extent of claimant's physical limitations, the Commissioner must seek the testimony of a vocational expert, or other similar evidence, that there are jobs in the national economy that the claimant is able to obtain and perform. *Id.* at 78. The VE can rely on information contained in government and other publications, including the DOT.  *See* 20 C.F.R. § 404.1566(d).   However, the ALJ has the responsibility to determine the claimant's capabilities based on all of the evidence.  *See Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir.1983).

Plaintiff asserts that the DOT descriptions of the jobs cited by the VE require

frequent reaching and are inconsistent with the job descriptions given by the VE.  Social

Security Ruling 00–4p states the standards for the use of a vocational expert as follows:

> Occupational evidence provided by a VE or VS [vocational expert or vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such a consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR-00-4P, 2000 WL 1898704, *2 (2000).

The Social Security Regulations thus place an affirmative duty on the ALJ to identify

and resolve any conflict between the vocational expert's testimony and the DOT before

relying on such testimony.  *See Whitehouse v. Colvin,* 2014 WL 4685187, *8 (D.Conn.

Sept. 19, 2014).  Here, having found that plaintiff was limited to only occasional reaching,

the ALJ did not identify the conflict between the vocational expert's testimony - that plaintiff

could perform the positions of administrative clerk, companion, and courier messenger -

and the information in the DOT that the three positions require frequent reaching (Tr. 214 -

228).  Nor did the ALJ resolve the conflict in his decision. The ALJ's catch-all question to

the vocational expert regarding any inconsistencies between the expert's testimony and

the DOT does not satisfy the ALJ's duty to identify, explain, and resolve the conflicts

between the expert's testimony and her decision. *See Diaz v. Astrue*, 2012 WL 3854958,

at *6 (D.Conn. Sept. 5, 2012) ("SSR 00-4p requires the ALJ to afford no room for

conjecture where there is an apparent conflict between the VE's testimony and the DOT and a resolution by this Court would be unduly conjectural in the absence of clarification from the ALJ."). Because the ALJ here elicited neither the basis for the VE's testimony that plaintiff could perform the jobs despite a limitation for only occasional reaching, nor a reasonable explanation for her deviation from the DOT, the court cannot determine whether substantial evidence supports the ALJ's step five findings and remand is required.

## B. The RFC Determination

Plaintiff also argues that the RFC determination is not based on substantial evidence because the ALJ did not point to any evidence to support his conclusion that plaintiff was capable of performing the walking and lifting required of light work. As stated above, light work requires that the claimant be able to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours in an eight-hour work day, and sit for six hours in an eight-hour work day. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

Here, the ALJ noted that "there are no medical opinions in the record that the claimant has or had a permanent disability . . . [and] no assessments of the claimant's functional limitations other than that of the consultative examiner" (Tr. 69).[3] Consultative examiner Donna Miller, D.O. opined that plaintiff had mild limitations for repetitive heavy lifting, bending, turning, twisting, reaching, pushing, and pulling (Tr. 364), but did not address plaintiff's complaint that she was incapable of prolonged walking, sitting, or standing. Nonetheless, largely relying on the medical evidence of record, the ALJ

---

[3] The record contains a Physical Residual Functional Capacity Assessment completed by E. Preisach, a single decision maker (Tr. 53-58). However, such an opinion is entitled to no evidentiary weight. *See Martin v. Astrue,* 2012 WL 4107818, *15 (N.D.N.Y. Sept. 19, 2012).

determined that plaintiff was capable of performing light work with certain exertional limitations.

In this case, the medical record indicates that plaintiff suffers from chronic pain in her neck and lower back that radiates into her lower extremity.  The diagnostic evidence indicates disc herniations and degenerative changes consistent with her complaints of pain.  It is well established in the Second Circuit that an ALJ is under an obligation to develop the administrative record fully, to ensure that there are no inconsistencies in the record that require further inquiry, and to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding. *See Rosa v. Callahan*, 168 F.3d at 79; *McClaney v. Astrue*, 2012 WL 3777413, *10  (E.D.N.Y. Aug. 10, 2012).

It previously has been noted in this district that "it is unreasonable to expect a physician to make, on his own accord, the detailed functional assessment demanded by the Act in support of a patient seeking SSI benefits." *Ubiles v. Astrue*, 2012 WL 2572772, *9 (W.D.N.Y. Jul. 2, 2012) (holding remand was required where ALJ found treating physician's office notes stating plaintiff was "presently disabled" were vague and non-specific, but made no attempt to seek clarification or request an assessment of plaintiffs physical limitations).  Here, while he noted the lack of opinion evidence, there is no evidence that ALJ Lewandowski attempted to obtain the information necessary to properly assess the plaintiff's RFC.  Instead, the ALJ relied on the limited assessment of the consultative examiner which did not address plaintiff's ability to walk, sit or stand for prolonged periods.  Given the incomplete record, it was incumbent on the ALJ to obtain a medical source statement from a treating physician regarding plaintiff's ability to do work-related activities.  Absent a reasonable explanation for the failure to obtain an RFC

13

assessment from any treating source, the court cannot conclude the ALJ fulfilled his affirmative duty to develop the record and remand is required on this ground. *Swanson v. Colvin,* 2013 WL 5676028, * 6 (W.D.N.Y. Oct. 17, 2013).

### C. Credibility

Finally, plaintiff contends that the ALJ failed to properly assess the credibility of her testimony regarding the effect of pain on her ability to do work-related activities. The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.")). The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. § 416.929.

The regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the

type, dosage, effectiveness, and side effects of any medications taken to alleviate the symptoms; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the symptoms.  20 C.F.R. § 416.929(c)(3)(i)–(vii); *see also Meadors v. Astrue*, 370 F. App'x 179, 184 n.1 (2d Cir. 2010).  The Commissioner's policy interpretation ruling on this process provides further guidance:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the ALJ found that plaintiff's impairments could reasonably be expected to cause the limitations testified to, but that her statements concerning the intensity, persistence and effect of those limitations were not credible "to the extent they are inconsistent" with the ALJ's RFC assessment (Tr. 68).  In making this determination, the ALJ considered the medical evidence of plaintiff's shoulder, back, neck, and knee impairments, and concluded that the medical findings were inconsistent with a significant impairment.  In light of plaintiff's complaints of pain, the ALJ limited plaintiff to light work and formulated the RFC to take into account limitations on overhead reaching, kneeling,

15

crouching, crawling, and other postural activities (Tr. 68-69).

In this case, the ALJ's credibility assessment was inadequate and requires remand. The ALJ found plaintiff's complaints inconsistent with the medical record but failed to engage in any analysis of plaintiff's testimony as required by the regulations. The ALJ engaged in no comparison of plaintiff's statements concerning her subjective complaints with the objective medical evidence in the record and failed to consider any of the relevant factors, or plaintiff's favorable work history. Where, as here, "the ALJ fails sufficiently to explain a finding that the claimant's testimony was not entirely credible, remand is appropriate." *Valet v. Astrue*, 2012 WL 194970, *22 (E.D.N.Y. Jan. 23, 2012) (citation omitted).

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 3) is granted, the Commissioner's decision is reversed, and the case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. Defendant's motion for judgment on the pleadings (Item 5 ) is denied. The Clerk of the Court is directed to close this case.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:   January 7, 2015

16